UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re: )
)
LEONOR HILDA JIMENEZ, ) Case No. 12-26282 HRT
)
Debtor. ) Chapter 13
)

**ORDER ON OBJECTION TO PROOF OF CLAIM**

This case comes before the Court on Debtor's *Objection to Proof of Claim #4-1 Filed by FirstBank* (docket #14) (the "Objection").

FirstBank (the "Bank") filed its *Response to Objection to Proof of Claim #4-1 Filed by FirstBank* (docket #24) (the "Response"). The Court set the matter for hearing. In anticipation the hearing, Debtor filed her *Objection* (docket #38), which is, in substance, a motion in limine seeking to exclude evidence of the Bank's attorney fees and costs alleging the Bank's failure to properly itemize the pre-petition interest, fees, expenses and other charges included in the amount of its claim as required under FED. R. BANKR. P. 3001(c)(2)(A).

The Court conducted a hearing on January 10, 2013, and heard evidence and argument of the parties. This matter raises two issues – one substantive and one procedural. The Debtor has objected to the amount of the Bank's pre-petition attorney fees incurred with respect to its three aborted pre-petition foreclosure proceedings commenced against the Debtor's home. Debtor's Objection thus raises the substantive issue of the reasonableness of the pre-petition attorney fees incurred by the Bank in order to pursue those three foreclosure proceedings. The procedural issue concerns whether the Bank complied with Rule 3001 and the appropriate penalty to be imposed if the Bank's proof of claim was not filed in compliance with the rule. At the close of the Debtor's evidence, the Bank made an oral motion for directed verdict on the basis that the Debtor has not met her burden to present sufficient evidence to negate the prima facie validity of the Bank's proof of claim.

I. FACTUAL BACKGROUND

Debtor executed a promissory note to the Bank on June 29, 2001, in the principal amount of $140,000.00, payable at 7% per annum interest over a term of 30 years (the "Note"). The proceeds of the Note were used to purchase the Debtor's residence at 920 Winona Court, Denver, Colorado (the "Property"), and the Note is secured with a deed of trust granting the Bank a security interest in the Property (the "Deed of Trust") (collectively the Note and the Deed of Trust are the "Loan Documents").

Debtor has fallen behind on her Note payments several times. Three pre-petition proceedings to foreclose on the Deed of Trust were initiated as a result of those delinquencies.

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

Those proceedings were initiated in 2004; in 2008; and in 2011. Each time, the Debtor cured the delinquency and the Bank dismissed its foreclosure. However, the attorney fees and expenses incurred by the Bank in each of those foreclosure proceeding are collectable from the Debtor under the Note and Deed of Trust and they remain outstanding obligations of the Debtor.

The Debtor's obligations under the Note and Deed of Trust again became delinquent in 2012. The Debtor anticipated that the Bank would again seek to foreclose its Deed of Trust and, lacking the wherewithal to cure the delinquency, the Debtor filed this bankruptcy case under chapter 13 on August 2, 2012.

The Bank filed its proof of claim #4-1 on September 4, 2012 (the "Claim"). The Bank's Claim reflects a total secured debt of $132,945.08, including a delinquent arrearage amount of $17,515.61. As reflected in the Bank's Claim, that arrearage consists of three delinquent payments in the total amount of $3,188.01 and $14,327.60 of pre-petition fees, expenses and charges. The Bank's Claim itemizes the pre-petition fees, expenses and charges as late charges amounting to $2,231.93 and attorney fees of $12,095.67.[1]

The evidence showed that the true amount of pre-petition attorney fees incurred by the Bank is $7,868.90. In addition to attorney fees, the Bank incurred appraisal fees of $970.00. The Bank also incurred expenses such as public trustee fees, title fees, filing fees, fax costs and photocopy costs amounting to $3,208.67.

## II. DISCUSSION

The Bank has not complied with Rule 3001(c)(2)(A). The Rule provides in relevant part that

> If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

FED. R. BANKR. P. 3001(c)(2)(A). The Bank's Claim includes the standard Mortgage Proof of Claim Attachment (Form B 10 (Attachment A)). That attachment contains numerous categories of typical fees and expenses to assist a claimant in itemizing its fees and expenses in order to comply with Rule 3001(c)(2)(A)'s itemization requirement. But all of the appraisal costs; title fees; public trustee fees; and filing fees were simply included as attorney fees of $12,095.67. In fact, as the Bank's Exhibit 12-A shows, that figure includes over $4,000.00 of appraisal costs

---

[1] During the presentation of evidence, counsel for the Bank brought to the Court's attention a duplication on an invoice. The total of the submitted invoices should be $12,047.57 which is the total of fees, expenses and appraisals listed on the Bank's summary Exhibit 12-A.

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

and other expenses that Rule 3001(c)(2)(A) requires to be itemized on a proof of claim whenever interest, fees and other charges are part of the claim being filed in an individual case such as this one.

Two consequences flow from the Bank's non-compliance with Rule 3001(c)(2)(A). First, the Bank does not enjoy the Rule 3001(f) evidentiary effect of a claim that is filed in accordance with the Rules. Rule 3001(f) provides that a proof of claim that is in compliance with the Rules shall constitute prima facie evidence of the amount and validity of the claim. Because the Bank's Claim is not entitled to that evidentiary presumption, the Bank bore the full burden of proof to support its Claim. Therefore, the Court will deny the Bank's motion for directed verdict. The second consequence is that a proof of claim that does not comply with the itemization requirement of Rule 3001(c)(2)(A) is subject to sanctions under Rule 3001(c)(2)(D).

A. Reasonableness of the Bank's Claimed Attorney Fees

The Bank presented evidence that the total amount of fees, expenses and appraisal costs due to the Bank in connection with its Claim is $12,047.57.[2] The portion of this figure that reflects the Bank's attorney fee expense is $7,868.90. The Debtor contests the reasonableness of the amount of the Bank's attorney fees.

The Court heard expert testimony presented by the Debtor on the reasonableness of the attorney fees incurred by the Bank with respect to the pre-petition foreclosure actions that it initiated. Defendant's expert has extensive experience in legal practice, filing and conducting deed of trust foreclosures in the state of Colorado, and is a partner in a law firm specializing in deed of trust foreclosures. Her experience is in high-volume foreclosure firms. Those firms use paralegal personnel to do the bulk of the routine processing of the foreclosure actions and use technology to great advantage. They tend to serve the market created by high volume servicers of mortgage loans that are held or guaranteed by governmental or quasi-governmental entities. Those high-volume foreclosure firms operate within schedules of flat-rate fees under the contracts that they enter into with the high-volume loan servicers.

By contrast, the Bank holds and services the Debtor's mortgage loan. It has formed a relationship with the Denver law firm of Rothgerber, Johnson & Lyons LLP ("Rothgerber") and Rothgerber does the Bank's legal work. Rothgerber is a full-service law firm and primarily bills for its services according to the hourly billing rates of its attorneys and paralegal personnel. Stephen Johnson is the partner at the Rothgerber firm who is reflected on invoices as having performed legal services in connection with the Bank's Claim. A paralegal designated on the invoices as P. Lord also performed services for the Bank. As of December of 2011, the invoices

---

[2] These are broken down as reflected on the Bank's Exhibit 12-A as: 1) attorney fees of $7,868.90; 2) expenses of $3,208.67; and 3) appraisal fees of $970.00.

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

in evidence show Mr. Johnson's billing rate to be $425.00 per hour and Ms. Lord's billing rate to be $185.00 per hour. The earliest invoices in evidence show Mr. Johnson billing $340.00 per hour and Ms. Lord billing $160.00 per hour.

The expert testimony presented by the Debtor was not helpful to the Court in analyzing the reasonableness of attorney fees in connection with the Bank's Claim. The specialized legal environment within which Debtor's expert has operated is quite different from the type of full-service firm employed by the Bank. In fact, she candidly acknowledged that her experience has been exclusively with high-volume foreclosure firms working on a flat-rate basis and that she has no experience with hourly billing.

The fact that foreclosure services provided by a specialized high-volume mortgage foreclosure firm are dramatically lower than the cost of similar services provided at an hourly rate by a full-service firm does not, in and of itself, demonstrate unreasonableness of the higher fees. The Bank has a long-standing relationship with the Rothgerber firm and has made a business decision to employ that firm to do its legal work – even the foreclosure work they could have done much more inexpensively at a specialized foreclosure firm.

The Court will deny the Debtor's objection to the reasonableness of the attorney fee portion of the Bank's Claim. Because Debtor's evidence went to a type of high volume legal practice, compensated through negotiated flat fees, which is unlike the Rothgerber full-service practice that charges hourly rates, that evidence failed to shed light on the reasonableness of the Rothgerber fees. Moreover, Rothgerber's invoices show an exercise of billing judgment and a delegation of work to a paralegal with a lower billing rate. Based on the Court's experience, Rothgerber's rates are within the reasonable range of fees that the Court sees charged in bankruptcy matters. The Court will not fault the Bank for choosing a full-service firm to do its legal work.

B. Sanctions under Rule 3001(c)(2)(D).

This case illustrates the purpose of the requiring claimants to itemize fees and expenses in the proof of claim. The Bank's Claim reflects attorney fees in the amount of $12,0957.67 when, in reality, the evidence establishes that the total attorney fees were $7,868.90. Under the rules, the Debtor had the right to expect that she would have been properly informed of the actual amount of attorney fees and the nature and amount of other expenses that were improperly lumped in with the attorney fees on the Bank's Claim. The Court cannot speculate what difference the correct information would have made to the Debtor. It is clear from her objection that she viewed attorney fees in excess of $12,000.00 to be excessive. Whether a proof of claim that reflected the correct attorney fee figure would have been acceptable to her or would have prompted the same objection cannot be known. Nonetheless, she had a right to have correct information provided in the Bank's Claim and Rule 3001(c)(2)(D) provides that the Court may invoke an appropriate sanction on account of the Bank's failure to comply.

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

The Rule permits the Court to exclude information omitted from the Bank's Claim as evidence at trial. FED. R. BANKR. P. 3001(c)(2)(D)(i). Accordingly, the Court will deny admission of the omitted information. The Bank's proof of claim does not itemize any of the appraisal fees of $970.00 nor does it itemize any of the other expenses of $3,208.67. The only fees that the Bank shows on its proof of claim are the attorney fees and properly itemized late charges, therefore, the Court will only admit evidence of the attorney fees which the Court finds total $7,868.90 and the uncontested late charges of $2,231.93.

In mitigation of its failure to comply with Rule 3001(c)(2)(A), the Bank's counsel provided detailed invoices of all legal services reflected in the Bank's Claim to Debtor's counsel in time for Debtor's counsel and her retained expert to fully review those in preparation for the hearing on Debtor's Objection. In addition, nothing in the evidence persuades the Court that there is any element of intention or willfulness involved in the Bank's failure to comply. Under the circumstances, the Court finds that exclusion of all of the Bank's evidence, as requested by the Debtor, would be an unnecessarily harsh sanction.

In addition to authorizing the Court to exclude the Bank's evidence at hearing, it allows the Court to "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." FED. R. BANKR. P. 3001(c)(2)(D)(ii). In addition to excluding the Bank's evidence with respect to the non-itemized expenses, under Rule 3001(c)(2)(D)(ii), the Court will order: 1) payment by the Bank of the attorney fees and expenses incurred by the Debtor in connection with her Objection to the Bank's Claim; and 2) denial of the Bank's ability to charge its fees and expenses incurred in defense of the Debtor's Objection to the Debtor under the Loan Documents.

C.  Allowance of the Bank's Proof of Claim

In accordance with the above discussion, the Bank's Claim will be allowed as follows:

1. Total Claim
   a. Principal         $116,723.41
   b. Interest          $2,111.10
   c. Late Charges      $2,231.93
   d. Appraisal Costs   $0.00        Disallowed; Rule 3001(c)(2)(D)(i)
   e. Expenses          $0.00        Disallowed; Rule 3001(c)(2)(D)(i)
   f. Attorney Fees     $7,868.90
   g. Claim Total       $128,935.34

2. Arrearage Claim
   a. Installments       $3,188.01 (3 pmts. principal, interest & escrow)
   b. Fees and expenses  $10,100.83 (late charges and attorney fees only)
   c. Arrearage Total    $13,288.84

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

### III. CONCLUSION

The Bank has demonstrated that it did incur and pay the attorney fees reflected in the Bank's Exhibit 12-A and the Debtor's evidence failed to raise an issue as to the reasonableness of those fees. Nonetheless, the Bank's failure to itemize is precisely the issue that Rule 3001(c)(2)(A) is intended to address so that debtors have complete information with respect to fees and other charges included in a mortgage creditor's claim. With more complete information, debtors are better able to determine whether a claim objection is appropriate. For that reason, a substantial penalty is appropriate even though the Bank's failure appears to be a matter of inadvertence. Payment of the Debtor's fees and costs will be made directly to Debtor's counsel. The Court will determine the amount of attorney fees and expenses to be paid upon the submission of a bill of costs by Debtor's counsel.

Therefore, in accordance with the above discussion, it is

**ORDERED** that the Bank's oral motion for directed verdict is DENIED. It is further

**ORDERED** that Debtor's *Objection to Proof of Claim #4-1 Filed by FirstBank* (docket #14) is GRANTED IN PART. The Court hereby determines that the allowed amount of the Bank's Claim is $128,935.34 and the amount necessary to cure the mortgage arrearage is $13,288.84. It is further

**ORDERED** that the Debtor's *Objection* (to the Bank's exhibits under Rule 3001) is GRANTED IN PART. Under Rule 3001(c)(2)(D)(i), as a sanction for FirstBank's failure to fully itemize its fees and expenses, the Court has not considered the Bank's evidence of appraisal costs and expenses not itemized on its proof of claim and the disallowance of those expenses is reflected in the Bank's allowed claim above. It is further

**ORDERED** that as an additional sanction, under Rule 3001(c)(2)(D)(ii), the Bank will pay to Debtor's counsel an amount to be determined by the Court for attorney fees and expenses incurred in connection with the Debtor's Objection. Debtor's counsel shall file a bill of costs reflecting attorney fees and expenses incurred in connection with Debtor's *Objection to Proof of Claim #4-1 Filed by FirstBank* and the hearing held in connection with that Objection no later than **February 15, 2013**, and FirstBank shall have until **March 1, 2013,** to file any objection it may have to the bill of costs. Thereafter, by separate order, the Court will determine the amount of the fees and expenses to be levied against FirstBank. It is further

ORDER ON OBJECTION TO PROOF OF CLAIM
Case No. 12-26282 HRT

     **ORDERED** that FirstBank is hereby prohibited from adding attorney fees, charges and expenses incurred in order to defend against Debtor's Objection as expenses to be charged to the Debtor under the mortgage Loan Documents.

     Dated this __1st__ day of February, 2013.

                                          **BY THE COURT:**

                                          Howard R. Tallman, Chief Judge
                                          United States Bankruptcy Court